IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DR. MARCELO HEREDIA MONTALVO, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. H-03-1745 |
| PARKER DRILLING COMPANY OF SOUTH AMERICA SUCURSAL ECUADOR, PARKER DRILLING COMPANY OF SOUTH AMERICA, INC., PARKER DRILLING COMPANY, LIMITED, d/b/a PARKER DRILLING COMPANY (TEXAS) LIMITED, AND PARKER DRILLING COMPANY, | |
| Defendants. | |

## **ORDER**

Pending before the court is the Motion for Recognition of Foreign Judgment (Doc. 17) filed by Plaintiff, Dr. Marcelo Heredia Motalvo ("Dr. Montalvo"), and the Response of the remaining Defendants to the suit, Parker Drilling Company of South America Sucursal Ecuador and Parker Drilling Company of South America, Inc. (Doc. 22.) At docket call on March 18, 2005 the parties agreed that before any trial on the merits they would submit Form 1069 to the Court for its determination of whether Form 1069 meets the requirements of the Texas Recognition Act, Tex. Civ. Prac. & Rem. Code §§ 36.001-008 ("Recognition Act"), which governs non-tax foreign judgments.

**I.      Background**

Dr. Montalvo, an attorney licensed to practice in Equador, is the duly appointed representative of the former workers of Parker Drilling Company of South America Sucursal Ecuador ("Parker Ecuador"). (Doc. 17, Exh. A, ¶ 1 & 2.) Parker Ecuador conducted drilling operations in Ecuador in the early 1990's. (*Id*. at ¶ 3.) Ecuadorian law places an obligation on foreign companies (like Parker Ecuador) to pay its workers a statutory profit-sharing wage bonus

that is a percentage of income, as well as a corporate income tax. In September 1993, former workers of Parker Ecuador and the Ecuadorian Government filed a complaint in Ecuadorian court alleging that Parker Ecuador had not paid the workers their statutory profit sharing wage bonus and had evaded taxes by misreporting their gross income. (*Id*. at ¶ 5.) On February 7, 1995, the trial court in Ecuador (First Fiscal District Tribunal) found Parker Ecuador liable for under reporting income and issued Resolution 1069. (*Id*. at ¶ 6.) On February 14, 1997, Parker Ecuador filed a lawsuit appealing the judgment in Resolution 1069 to the Ecuadorian Supreme Court. (*Id*. at ¶ 7.) On December 17, 1997, the Ecuadorian Department of Labor acting on Resolution 1069 issued Resolution 4405, that reaffirmed Resolution 1069. (*Id*. at ¶ 8.) The Ecuadorian Department of Labor applied the liability findings contained in 1069 and calculated the amounts owed to the workers. (*Id*.) The judgment declared that Parker Ecuador owed its workers 898,043,801 Sucres for 1991 and 1,344,041,001 Sucres for 1992. (*Id*.) Based upon historical exchange rates for the Ecuadorian sucre and the U.S. Dollar, provided by the Central Bank of Ecuador, Parker owes its former workers $839,818.65 for 1991 and $852,493.34 for 1992 for a total of $1,692,312.99. (*Id*.) On March 10, 1998, the Supreme Court of Ecuador affirmed Resolutions 1069 and 4405, and as all avenues of appeal were exhausted, the Resolutions became final. (*Id*. at 10.) Further, Dr. Montalvo declares that the former workers of Parker Ecuador are entitled to interest, that the Central Bank of Ecuador calculates the legal interest on all judgments in Ecuador, and that such bank has calculated the principal and interest on the judgment to be $2,812,371.40 as of September 1, 2004. (*Id*. at ¶ 13.)

With respect to the legal proceedings in Ecuador, Dr. Montalvo asserts in her declaration that the Ecuadorian legal system provides for impartial courts and judges and all defendants receive due process under the laws of Ecuador. (*Id*. at ¶ 11.) She also states that the Ecuadorian courts had personal jurisdiction over Parker Ecuador because Parker Ecuador conducted drilling operations in Ecuador; and further, she states that the Ecuadorian courts have jurisdiction to hear disputes by workers against their employer for failing to pay the mandated

statutory profit-sharing wage bonus. (*Id.*) Dr. Montalvo points out that in the Ecuadorian litigation, Parker Ecuador received ample notice of the proceedings and was represented at all times by competent lawyers in Ecuador including Rolland Savinas and Cesar Holguin Espinel, and that the judgment at issue in this lawsuit was not obtained by fraud, but was the result of a long investigation into Parker Ecuador's accounting practices and financial reporting. (*Id.* at ¶ 12.)

Dr. Montalvo declares she is presently unaware of any of any other judgment against Parker Ecuador that conflicts with this final judgment, no agreement existed between the former workers of Parker Ecuador and the company to be settled by arbitration or in any other manner than in an Ecuadorian court, and that the proceedings in Ecuador were not seriously inconvenient to any party to the lawsuit because all of the workers were residents of Ecuador and Parker Ecuador conducted drilling operations in Ecuador. (*Id.* at ¶ 12.) Finally, Dr. Montalvo states that the country of Ecuador recognizes judgments entered in the United States and gives them full faith and credit. (*Id.*)

**II.      Analysis**

Dr. Montalvo declares that the Ecuadorian judgment at issue in this lawsuit is a judgment for wages and not a tax, that any money collected as a result of this judgment will go to the former workers of Parker Ecuador, and that the Ecuadorian government will not receive these funds. (*Id.* at ¶10.) Under Texas State law, the recognition and enforcement of foreign money judgments is governed by the Recognition Act, Tex. Civ. Prac. & Rem. Code §§ 36.001-008 ("Recognition Act"); and, the Recognition Act sets forth the grounds on which recognition of a foreign country money judgment may be challenged. *Don Docksteader Motors, Ltd. v. Patal Enterprises, Ltd.*, 794 S.W.2d 760, 760 (Tex. 1990). In summary, the Recognition Act expressly provides that a foreign country money judgment "is enforceable in the same manner as a judgment

of a sister state." *Id*. (citing Tex. Civ. Prac. & Rem. Code § 36.004 ( Vernon 2003)).[1] That is, such a judgment is enforceable unless the judgment debtor satisfies the burden of establishing one of the ten specific grounds for non-recognition provided in section 36.005. *Dart v. Balaam*, 953 S.W.2d 478, 480 (Tex. App. – Ft. Worth, 1997, *rehearing overruled*). The party seeking to avoid recognition has the burden of proving a ground for non-recognition. *Id*. (citing *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1005 (5th Cir. 1990)). The Recognition Act strictly narrows the issues that may be raised and considered by the trial court when determining whether to recognize a foreign country judgment, restricting the court, under any circumstances, from reviewing the foreign country judgment in relation to any matter not specified in 36.005. *Id*. (citing Tex. Civ. Prac. & Rem. Code Ann. Section 36.0044(g)).[2]

---

[1] Texas will recognize a foreign judgment under the Recognition Act if several conditions are met:

(1) The judgment is final and conclusive and enforceable when rendered, even though appeal is pending or the judgment is subject to appeal. Tex. Civ. Prac. & Rem. Code Ann. 36.002(a)(1) (Vernon 2003)

(2) Except as provided by Section 36.005, a foreign country judgment that is filed with notice given as provided by this chapter, that meets the requirements of Section 36.002, and that is not refused recognition under Section 36.0044 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The judgment is enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit. Tex. Civ. Prac. & Rem. Code Ann. 36.004 (Vernon 2003)

(3) A copy of a foreign country judgment authenticated in accordance with an act of congress, a statute of this state, or a treaty or other international convention to which the United States is a party may be filed in the office of the clerk of a court in the county of residence of the party against whom recognition is sought or in any other court of competent jurisdiction as allowed under the Texas venue laws. Tex. Civ. Prac. & Rem. Code Ann. 36.0041 (Vernon 2003)

(4) Notice of the filing of the judgment is given to the party against whom recognition is sought.

(5) There are no grounds because of which the judgment should be refused recognition under Tex. Civ. Prac. Rem. Code Ann. 36.005 (Vernon 2003.) *See Reading & Bates Construction Co. v. Baker Energy Resources Corp.*, 976 S.W.2d 702, 706 (Tex. App. – Houston 1998,

[2] The court may refuse recognition of the foreign country judgment if the motions, affidavits, briefs, and other evidence before it establish grounds for nonrecognition as specified in Section 36.005, but the court may not, under any circumstances, review the foreign country judgment in relation to any matter not specified in Section 36.005. Tex. Civ. Pract & Rem. Code Ann. 36.0044(g).

Parker Drilling based its original motion for Non-Recognition on the definition of "Foreign Country Judgment" as "a judgment of a foreign country granting or denying a sum of money other than a judgment for (1) taxes, a fine or other penalty." Tex. Civ. Prac. & Rem. Code Section 36.001. Defendants assert, that the allegations themselves in Dr. Montalvo's First Amended Original Petition acknowledged that the foreign judgment was one seeking tax penalties. (*See* Doc. 22, ¶ 6, and Exh. 1, ¶¶'s 8.4-8.6.)

In determining whether the judgment against the Defendant in Ecuador was for taxes, and hence unenforceable, the court will examine the substance of the arrangement rather than rely on either of the pleadings alone. By statute, companies doing business in Ecuador must pay fifteen percent of profits directly to the workers involved in a particular project. After the worker profiting-sharing percentage is deducted, an additional twenty-five percent is assessed against the remaining income. The Plaintiff alleges that the fifteen percent deducted for the workers is a not a "tax" within the meaning of the Recognition Act, and therefore is entitled to the Ecuadorian judgment. Tex. Civ. Prac. & Rem. Code Section 36.001(2)(A). As the court understands, the profit-sharing percentage is paid directly to the workers involved on a particular project and does not go into the general funds available for public spending. Black's Law Dictionary defines a tax as a "monetary charge imposed by the government on persons, entities, or property to yield public revenue." Black's Law Dictionary, 7th Ed. (West 1999), p. 1469. Thomas M. Cooley suggested that taxes "are levied by the state by virtue of its sovereignty *for the support of government and for all public needs*." 1 Thomas M. Cooley, The Law of Taxation, Section 1, at 61-63 (Clark A. Nichols ed., 4th Ed. (1924) (emphasis added)). Although from the Defendant's standpoint, the distinction between the fifteen-percent assessment and the twenty-five percent corporate tax rate might be irrelevant, the funds are for different purposes. The profit-sharing portion goes to the workers, and the additional twenty-five percent rate applied against the remaining income goes to the government for public use. The twenty-five percent portion assessed against the Defendant is a "tax" in the traditional sense, while the profit-sharing portion is not. The

translated diagram in Resolution 4405 reenforces this interpretation of the tax assessment. It labels the amount remaining after the fifteen percent profit-sharing percentage is deducted as "taxable profit" from which twenty-five percent would then be applied . (Doc. 17, Exh. C, p.2.)

        The Defendant also argues that the Plaintiff has effectively conceded that the judgment was for a tax by previously referring to the Ecuadorian assessment as a "tax." (Doc. 22, ¶ 6.) The Defendant argues that a plain reading of the English translation of Resolution No. 1609 leads to the conclusion that the judgments in Ecuador were for taxes, and not some other monetary judgment. (Doc. 30 ¶ 2.) The Defendant does not, however, elaborate on the substance of the fifteen percent profit-sharing percentage, nor cite any cases to aid the court in determining whether the judgment was a "tax" within the meaning of the Recognition Act. Tex. Civ. Prac. & Rem. Code Section 36.001(2)(A). The party seeking to avoid recognition has the burden of proving a ground for non-recognition. *Id*. (citing *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1005 (5th Cir. 1990)). As noted earlier, in determining whether the assessment was a "tax", the court examined the substance of the payment and did not solely rely on either party's characterization. Ecuador created a mandatory payment for companies in which a percentage of the profits would go to workers. Such a scheme allows companies such as the Defendant to pay low salaries when ventures are unprofitable, but requires them to share profits in the event the ventures are successful. While profit-sharing arrangements are often negotiated by private parties, in this instance the government of Ecuador requires them as a cost of doing business. Because the government created the profit-sharing requirement, and not two private parties, the assessment in the Ecuadorian court has some of the elements of a tax, namely that of a government imposed payment. The government involvement confuses the issue, but, because the money is ultimately distributed to a limited number of workers and is not for public use, the Court finds that it is not a tax within the meaning of the Texas Statute. The Ecuadorian judgments against the Defendant are therefore not excepted from the Recognition Act and must be acknowledged by this court unless there are other grounds for not recognizing the judgment. *Dart v. Balaam*, 953 S.W.2d 478,

480 (Tex. App. – Ft. Worth, 1997, *rehearing overruled*). The Plaintiff points out that the Defendant had adequate representation at all stages of the case in Ecuador, that jurisdiction was proper, and that the judgments were rendered in accordance with due process. There are no other discretionary grounds by which the court could ignore the Ecuadorian judgment.

**Evidence**

The Defendant objects broadly to the use of the Ecuadorian judgments in the Plaintiff's motion by arguing that the translations of the judgments from Spanish to English are inadmissible hearsay. The question of this court's power to recognize these Ecuadorian judgments is the pivotal issue.

First, the judgments are authentic as foreign public documents. Texas rule 902(3) provides a basis for self-authentication that greatly liberalized the treatment of foreign public documents in Texas courts. See McLaughlin, Weinstein, & Berger, Weinstein's Federal Evidence Section 902.05[3] (2d ed. 1998). Exhibits 1, 2, and 3 all bear the seal of the respective court, are dated with a stamp, and signed by the presiding authority. They appear to be what all parties implicitly assume the are, judgments against the Defendant in various Ecuadorian courts.

Second, the translations of the judgment are admissible and do not constitute hearsay. Defendant cites one criminal case with no additional explanation supporting its objection to the translations, *U.S. v. Martinez-Gaytan*. 213 F.3d 890 (5th Cir. 2000). The *Martinez* Case noted that "except in unusual circumstances, an interpreter is no more than a language conduit and therefore his translation does not create an additional level of hearsay." *Id.* at 892 (quoting *United States v. Cordero*, 18 F.3d 1248, 1252 (5th Cir. 1994) (quoting *United States v. Lopez*, 937 F.2d 716, 7124 (2d. Cir. 1991)). The Defendant only indirectly attacks the accuracy of the translation by complaining that the Plaintiff has produced several differing translations and has yet identified which translation it proposes to use. June 3, 2005. (Doc. 29, ¶ 4.) The facts presented are not sufficiently unusual to raise suspicions about the correctness of the translations. The applicable

rules of evidence support the admission of the translations as well. Each translation in the record bear a Certificate of Acknowledgment signed by John R. Waters, Vice Consul of the United States of America dated May 22, 2002 with seal of Consular Services. In addition they contain the signature of the translator. The translations are therefore admissible under Texas Rule 1009 which requires that a translation of foreign language documents shall be admissible upon the affidavit of a qualified translator setting forth the qualifications of the translator and certifying that the translation is fair and accurate." Tex. R. of Evid. 1009(a). Furthermore, the Defendant has not specifically objected to the inaccuracies it finds objectionable as required by subsection (b) of the rule. *Id.* at (b).

Finally, the Defendants object to Exhibit 5, labeled "Calculation from the Central Bank of Ecuador dated September 1, 2004" as not properly authenticated and inadmissible hearsay. (Doc. 17, ¶ 6.) Exhibit 5 contains a spreadsheet of figures with Spanish words above each column. The methodology used to calculate post-judgment interest is unclear and the Plaintiff listed no witness who will testify to its effect. Additionally, no witness was listed who will authenticate the content of the exhibit, and no affidavit is included by an official with knowledge of the document. The Court is left with no basis upon which to award post-judgment interest to the Plaintiff. In this ruling the Court addresses only the applicability of the Recognition Act and the characterization of the Ecuadorian judgment in that analysis.

Accordingly it is hereby

ORDERED that the Motion for Recognition of Foreign Judgment (Doc. 17) is GRANTED. Resolutions 1069 and 4405 are recognized and Parker Drilling Company of South America Sucursial Ecuador is liable to Plaintiff Dr. Marcelo Heredia Montalvo for $1,692,312.99. It is further

ORDERED that the parties are to submit within ten days of the entry of this ORDER a status report concerning any further proceedings in this matter.

SIGNED at Houston, Texas, this 28th day of September, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE