IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Dr. Marcelo Heredia Motalvo, | ) | |
| Plaintiff | ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. H-03-1745 |
| Parker Drilling Company of South America Sucursal Ecuador and Parker Drilling Company of South America, Inc. | ) ) ) ) ) | |
| Defendants | ) | |

**MEMORANDUM AND ORDER**

At a hearing on March 18, 2005 that served as a trial, the parties asked the court to interpret a single document. On September 28, 2005, the court issued a ruling holding that the document was a valid judgment to be recognized in Texas. Doc. 33.

Before the court is a motion for reconsideration brought by the Defendants to this suit, Parker Drilling Company of South America Sucursal Ecuador and Parker Drilling Company of South America, Inc. (Parker). Doc. 35. A declaration from a lawyer, Dr. Cesar R. Holguin, supports the motion. Doc. 35, Exh. 1. In response, the Plaintiff, Dr. Marcelo Heredia Motalvo ("Dr. Montalvo"), opposed the motion on procedural grounds and moved to strike Dr. Holguin's declaration. Doc. 41 and 42. He also moved for entry of a judgment. Doc. 43. Parker responded to Dr. Montalvo's motion to strike. Doc. 44.

The Defendant's motion for reconsideration is GRANTED. Doc. 35.

The Plaintiff's motion to strike newly filed evidence is GRANTED. Doc. 41 and 42.

The Plaintiff's motion for entry of a judgment is DENIED. Doc. 43.

The Plaintiff's request that this court recognize Resolution 1069 as a foreign country judgment is DENIED and the case will be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1991 and 1992, Parker operated a business in Ecuador. Ecuador law required Parker to pay a share of its profits to its workers and a different share of its profits to the government as taxes. The Ministry of Finance audited Parker's operations and served Parker's legal representative with six Audit Reports on April 7, 1994. Departmento de Reclamaciones de Actas de Fiscalizacion, El Director General De Rentes, Resolucion 1069 at 1 (1995) (Ecuador) ("Resolution 1069"). Parker filed an administrative appeal to contest auditors' conclusions. Id. at 1. The Ministry of Finance resolved the appeal by issuing Resolution 1069 on February 7, 1995. Id.

Resolution 1069 is a 28-page document analyzing and resolving various accounting disputes. It concluded that Parker under-reported its profits. Id. at 23. For 1991, the Ministry found, "Net Earnings before 15%" equaled 5,944,228,780 Sucres.[1] The next line subtracted "15% employee profit-sharing" of 891,634,317 Sucres from the "Net Earnings" to provide a "Taxable Income" of 5,052,594,463. In 1992, the "Pre-15% Net Earnings" totaled 8,962,979,461 Sucres. Thus, the "15% employee share" equaled 1,344,446,919 Sucres and the "Taxable Income" equaled 7,618,532,542 Sucres. After calculating Parker's net earnings, the amount owed to its workers, and its taxable income,

---

[1]The translation reads 6,944,228,780 Sucres, but the proper arithmetical calculations indicate that the higher figure is nothing but a misreading of a barely legible document printed on a dot matrix printer.

2

the Ministry of Finance recited the amount of the "tax" that Parker owed, the amount that it had already paid, and the difference between the two in three parallel columns.  Id. at 25.  Parker had underpaid its taxes by 1,330,710 Sucres in 1991 and 2,962,202 Sucres in 1992.

Having calculated the amount that Parker had paid towards its tax bill, Resolution 1069 concluded: "in accordance with the power vested in it by the Tributary Code" the Ministry of Finance "DECIDES:  (1) To modify the content of [certain] Audit Department Reports … to affirm the holdings of [other] Audit Department Records… (2) To issue credit certificates for which the Department of Control and Liquidation of Credit Instruments and Notes, will act in accordance with the Law; and the provisions of the Arts. 49 and 97 of the Internal Tributary Regime Law will apply, namely the Corporation's penalty of 100% surcharge on non-withheld taxes.  [and] (3) To notify" Parker's legal representative of Resolution 1069.  Id. at 27-28.

After Parker unsuccessfully appealed Resolution 1069 through Ecuador's court system, the Ministry of Finance issued another resolution on October 2, 1997.  Departmento de Reclamaciones Por Otros Conceptos, El Director General De Rentes, Resolucion 4405 (1997) ("Resolution 4405").[2]  Resolution 4405 reprinted part of the decision of "the Court on Fiscal Matters No. 1, Court No. 3, in Quinto," amending Resolution 1069 and calculating the final amount of taxes that Parker owed.  It described itself as an order liquidating taxes, i.e., a judgment for taxes.

On April 7, 2003, the Plaintiff filed a, "first amended original petition" in the 113th Judicial District of Harris County, Texas on behalf of Parker's former workers.

---

[2]The court notes that the same word, "Reclamaciones" was translated as "Appeals" on Resolution 1069 and "Claims" on Resolution 4405, but the distinction appears unimportant.

Doc. 1, Exh. 1.  The petition argued that Ecuador's Ministry of Finance required Parker to pay its workers through a pair of resolutions.  Doc. 1, Exh. 1 at 4, ¶¶8.4-8.6.  The petition also asserted that the workers attempted to enforce their award, but could not.  Id.¶¶8.9-8.10.

On May 20, 2003, Parker filed an answer in the 113th Judicial District of Harris County, Texas.  Doc. 1, Exh. 2.  Parker asserted that the judgment cannot be recognized, "as it is a foreign judgment for 'taxes, a fine or other penalty.'"  Id. at 1, ¶1.  Parker's answer also contained a general denial.  Id. at 2, ¶2.  In a section entitled "specific responses," Parker reiterated the defense contained in the answer's first paragraph.  Id., ¶3.  In its trial brief, Parker explained, "no money judgment exists in favor of the Plaintiff (or the individuals that he represents).  The judgment for which recognition is sought is a ruling of the Ecuadorian tax authorities affirming a tax audit[.]"  Doc. 30 at 3, ¶9.

At the docket call conference on March 18, 2005, the parties agreed that the court should conduct a "trial" by interpreting 1069.  Dr. Montalvo's lawyer, Mr. Sydow, "understood that the sole issue was whether this was a judgment for taxes, fines or penalties."  Transcript of Docket Call, March 18, 2005 at 4:15-16 (Doc. 40).  However, Parker's attorney, Mr. Jones, disagreed:  "Quite frankly you don't even know as you sit here right now what it is you are being asked to recognize, so assume we get past that point and we can submit to you the document that we agree that you are interpreting… I think the document is what it is. … They have to show you that the plaintiff holds a money judgment against the defendant.  Otherwise, the Act doesn't apply … We don't think you get there.  If you concluded that they in fact do hold a money judgment, it's clear that the document that they seek to have you recognize is a decision by the

Ecuadorian IRS. It is a tax judgment." Id. at 5:7-23. "The sole issue is do they hold the money judgment against this defendant. … Is there a specific sum of money that has been awarded in that ruling. And we suggest you can't find it no matter how hard you look." Id. at 6:15-20. Mr. Jones stipulated only that the copy of Resolution 1069 was an authentic copy of Resolution 1069: "There is not a money judgment in favor of his client against my client. There is a document, and I think that we can stipulate - I think we have - as to what that document is. And I think that it is the resolution number 1069. And I think we could probably agree to submit a copy of 1069 to you and let you decide if that fits under the statute." Id. at 7:15-21. Having argued that no judgment existed, Mr. Jones was, "perfectly comfortable in submitting a copy of 1069" to allow the court to "determine if [Resolution 1069] meets the requirements of the statute[.]" Id. at 8:7-10. Mr. Sydow agreed. Id. at 8:11-12. Consequently, Resolution 1069 was the only document submitted to the court. It was marked as Plaintiff's Exhibit 1. Id. at 8:21.

## LEGAL ANALYSIS

**I.     The Court may reconsider its previous decision.**

Dr. Montalvo objects to any reconsideration of the court's decision because Parker cannot rescind its previous stipulations and because Parker has not met the proper standard that would allow this court to reconsider its original decision.

Although Parker cannot rescind a stipulation, Parker stipulated only that the document, the original copy of Resolution 1069 in the original Spanish, was an accurate copy of Resolution 1069. It did not stipulate (1) that Resolution 1069 was a judgment, (2) that any copy of Resolution 4405 was admissible, or (3) that Dr. Montalvo's declaration explaining the nature of Resolutions 1069 and 4405 was admissible or accurate. In fact, Parker's argument that it did not stipulate that Resolution 1069 was a

5

judgment fills almost all of the transcript from the hearing on March 18, 2005.  Doc. 40.  Parker's trial brief also indicates that it did not stipulate that Resolution 1069 was a judgment.  Doc. 30 at 1, ¶1.

This court's previous ruling misapprehended the scope the parties' stipulation.  Its error resembled either hearing "Exhibit B" when an attorney actually stipulated to the admissibility of "Exhibit P" or inaccurately transcribing a hand-written note.  A court has no obligation to ratify, and a party has no right to benefit from, a mistake resembling a clerical error.  Consequently, Dr. Montalvo has no procedural basis for opposing Parker's motion and this court must re-evaluate Resolution 1069 as if it had interpreted the stipulation properly after the hearing on March 18, 2005.

**II.        The Court may consider only Resolution 1069.**

Because the parties submitted only Resolution 1069 at trial, this court will consider only that document in this decision.  Parker offered a declaration by Dr. Cesar R. Holguin, an attorney from Ecuador, to support its motion for reconsideration.  Dr. Montalvo moved to strike the declaration of Dr. Holguin as new evidence.  If this court adopts Dr. Montalvo's position, then it must consider only the evidence submitted at trial.  Parker stipulated only to the authenticity of Resolution 1069.  Dr. Montalvo never laid any foundation for considering his declaration or Resolution 4405.  Because Dr. Montalvo did not submit his declaration or Resolution 4405 to the court at trial, he gave Parker no reason to offer contradictory evidence, such as the declaration of Dr. Holguin.  Thus, Parker's position regarding Dr. Holguin's declaration appears to be contingent:  if the court considers Dr. Montalvo's declaration, then it should consider Dr. Holguin's declaration.  If it does not consider Dr. Holguin's declaration, then it should consider only Resolution 1069 and disregard Resolution 4405 and Dr. Montalvo's declaration.

6

The parties agreed to try this case on the basis of a single document, Resolution 1069. Neither party sought to admit any other testimony or documentation that would assist the court when interpreting it. Thus, this court will disregard the declarations of Dr. Holguin and Dr. Montalvo as well as Resolution 4405 and all other exhibits attached to preliminary motions. The only document properly before the court is Resolution 1069. Thus, this opinion has no effect whatsoever on any document other than Resolution 1069.

**III.      Resolution 1069 is not a judgment.**

Dr. Montalvo argues that Resolution 1069 is a judgment from Ecuador for money in his favor. Parker argues that it is not a judgment that Texas may recognize. The recognition and enforcement of foreign country money judgments is governed by the Recognition Act, Tex.Civ.Prac. & Rem.Code §§ 36.001-.008, and by the Uniform Enforcement of Foreign Judgments Act, Tex.Civ.Prac. & Rem.Code §§ 35.001-.008 ("The Acts"). *Don Docksteader Motors, Ltd. v. Patal Enterprises, Ltd.,* 794 S.W.2d 760 (1990). The Acts prevents parties from using the Texas courts to relitigate disputes resolved in other jurisdictions. *Dart v. Balaam,* 953 S.W.2d 478, 480 (Tex.App.-Fort Worth, 1997).

A "foreign country judgment" is a, "judgment of a foreign country granting or denying a sum of money." Tex. Civ. Prac. & Rem. § 36.001(2). The phrase, "foreign country judgment," does not include judgments for taxes, fines, penalties, or matrimonial or child support. Id. A "foreign country" includes any "governmental unit," not merely a country's court system. Tex. Civ. Prac. & Rem. § 36.001(1). Texas will recognize a foreign country judgment only when the judgment is, "final and conclusive and enforceable where rendered." Tex. Civ. Prac. & Rem. § 36.002. The law of the

jurisdiction that allegedly entered a judgment determines the status of a purported judgment. *Hernandez v. Seventh Day Adventist Corp., Ltd.,* 54 S.W.3d 335 (Tex.App.-San Antonio, 2001). If a document, on its face, appears to meet the statutory definition of a foreign judgment, then filing it establishes a prima facie case for the party seeking to enforce it. *Mitchim v. Mitchim,* 518 S.W.2d 362, 364 (Tex. 1975). The burden then shifts to the party resisting the judgment to establish that the document fails to meet the statutory requirements of an enforceable foreign judgment. *Id.* Conversely, when a judgment does not appear to be valid on its face, a plaintiff bears the burden of proving the judgment's validity. *Dear v. Russo,* 973 S.W.2d 445, 448 (Tex.App.-Dallas, 1998).[3] In *Dear,* a plaintiff sought to domesticate a judgment from Ohio. The judgment indicated that the jury had returned a verdict in favor of the "plaintiff," but did not indicate which plaintiff had prevailed. *Id.* at 447. Therefore, the Court of Appeals held that the plaintiff had not proven that it was a final judgment under Ohio law.

Thus, Dr. Montalvo bears the initial burden of showing that Resolution 1069 is actually a judgment under Ecuador's law.[4] Foreign law is a question of fact that must be pled and proved. *Talbot v. Seeman,* 1 Cranch 1, 5 U.S. 1 (1801); *Symonette Shipyards, Limited v. Clark,* 365 F.2d 464 (5th Cir. 1966); and *Rowan v. Commissioner*

---

[3]Both *Dear* and *Mitchim* analyzed judgments from sister states, rather than foreign countries. However, *Hernandez* cited *Dear* when determining what burdens the parties to litigation regarding a foreign country judgment bore. This court will employ the same analytic method that the *Hernandez* court endorsed and conclude that parties bear the same burden when asking a court in Texas to recognize either a foreign judgment or a foreign country judgment.

[4]Ten grounds for refusing to recognize a judgment also exist. Tex. Civ. Prac. & Rem. § 36.005. A party asking a court to refuse to recognize a foreign country judgment bears the burden of establishing that grounds for non-recognition exist. *Banque Libanaise Pour Le Commerce v. Khreich,* 915 F.2d 1000 (5th Cir. 1990), *reh'g denied.* However, the grounds for non-recognition are irrelevant to the court's decision because a judgment is for taxes is not grounds for non-recognition. Instead, a judgment for taxes is a judgment that does not fall within the definition of a "foreign country judgment."

*of Internal Revenue,* 120 F.2d 515 (5th Cir. 1941). In fact, a "district court is not required to conduct its own research into the content of foreign law if the party urging its application declines to do so. 'Although the court is permitted to take judicial notice of authoritative statements of foreign law, nothing requires the court to conduct its own research into obscure sources.'" *Mutual Service Ins. Co. v. Frit Industries, Inc.,* 358 F.3d 1312, 1321 (11th Cir. 2004) (quoting *McGhee v. Arabian Am. Oil Co.,* 871 F.2d 1412, 1424 n. 10 (9th Cir. 1989)). Because Dr. Montalvo presented no evidence other than Resolution 1069 and because this court has no obligation to research foreign law, this court must determine whether the text of Resolution 1069 grants Dr. Montalvo, or his clients, a money judgment that appears enforceable in Ecuador. If the text of Resolution 1069 does not establish the elements of a foreign country judgment, then Dr. Montalvo has failed to meet the burden of proof that all plaintiff's bear.

Resolution 1069 is not a "foreign country judgment," even though governmental unit of Ecuador issued it after an apparently fair and thoughtful process akin to litigation. Resolution 1069 is neither an order to pay money nor enforceable by Dr. Montalvo or his clients. Instead, it is an order that (1) amended some government records, (2) affirmed other government records, and (3) ordered another government agency to begin the process of sanctioning or fining Parker.

Although Resolution 1069 mentions the sum that Parker must pay to its workers, its structure indicates that it does not constitute an order to pay any amount of money. Resolution 1069 is the result of an appeal and its three-part structure resembles any appellate decision rendered by a court or administrative agency in the United States. First, it explains the procedural posture of the appeal on page 1. Second, it analyzes a

9

party's arguments, the law, and the relevant facts on pages 2 through 27. Third, it issues orders on pages 27 and 28.

Because Dr. Montalvo did not present any evidence explaining Ecuador's law at trial, this court must interpret Resolution 1069 by comparing it to legal documents with which this court is familiar. Consequently, this court infers that each section of Resolution 1069 has the same effect under Ecuador's law that it would if it has been issued by a court or administrative agency in the United States. Specifically, the second section analyzing the law and the facts of the case may provide some guidance to other courts deciding subsequent cases, but it does not constitute an actual order that binds any party to the litigation. Only the third section constitutes an enforceable order, much like an appellate court's decision to affirm, reverse, or remand a case.

Resolution 1069 is not an order to pay wages for two reasons. First, it mentioned the share of profits that workers receive only in its second section, rather than in the third section that follow the capitalized word, "DECIDES." After the word "decides," Resolution 1069 fails to mention any payment to workers. In fact, Resolution 1069 does not actually order Parker to pay any money to any person, entity, or government agency. Like an appellate decision that orders a trial court to enter a judgment, Resolution 1069 orders the amendment of certain official documents and the issuance of "credit certificates." Issuing "credit certificates" appears to initiate a process through which the Department of Control and Liquidation of Credit Instruments and Notes will generate a subsequent order inflicting a penalty equal to 100% of non-withheld taxes on Parker in accordance with "Articles 49 and 97 of the Internal Tributary Regime Law." Additionally, the fact that Resolution 1069 explains how Ecuador's government enforces the sanctions against Parker, but contains no similar

10

explanation of how Dr. Montalvo, the workers he represents, or the government may enforce Parker's obligations to its workers bolsters this court's conclusion that Resolution 1069 does not contain any enforceable order regarding wages.

Second, the way in which Resolution 1069 discusses the share of profits that workers receive does not even imply that the Ministry of Finance considered whether Parker had paid its workers. Instead, the amount owed to workers is merely a line in a table showing how to calculate a company's taxable income. In the context of Resolution 1069, the 15% share of net earnings owed to workers is nothing more than a variable in an equation that resembles a standard deduction, not an independent order.

Additionally, the Ministry of Finance discussed and calculated the taxes that Parker owed far more carefully than it discussed the wages that Parker might be obligated to pay. When the Ministry of Finance determined that Parker owed taxes, it showed each calculation in several tables. One of those tables compared how much Parker had already paid to how much it owed. Resolution 1069 does not contain any similar tables showing the difference between Parker's debt to its workers and Parker's payments to its workers. In fact, Resolution 1069 does not even assert that Parker actually failed to pay its workers. The presence of such a detailed calculation of taxes owed and the absence of any similar calculation of wages owed suggests that Ecuador's Ministry of Finance did not consider the amount that Parker owed to its workers when it issued Resolution 1069.

For these reasons, this court holds that Resolution 1069 is not, on its face, a judgment for some amount other than taxes. If Resolution 1069 is a judgment, then this court holds that it is not a judgment that, on its face, Dr. Montalvo or the workers he represents can enforce. Because Dr. Montalvo has not submitted any evidence clarifying

the effect of Resolution 1069, this court denies Dr. Montalvo's petition for recognition of a foreign country judgment with prejudice as a decision on the merits of his case.

Accordingly, the court hereby ORDERS:

The Defendant's motion for reconsideration is GRANTED. Doc. 35.

The Plaintiff's motion to strike newly filed evidence is GRANTED. Doc. 41 and 42.

The Plaintiff's motion for entry of a judgment is DENIED. Doc. 43.

The Plaintiff's request that this court recognize Resolution 1069 as a foreign country judgment is DENIED and the case will be dismissed with prejudice.

SIGNED at Houston, Texas, this 18th day of April, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE